# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 23, 2022

Lyle W. Cayce
Clerk

No. 20-20341

Lawrence Higgins,

*Plaintiff—Appellant*,

*versus*

Ernest Navarrete, *Major*; Deleta Jones, *Captain*; Richard Morris, *Warden*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-2419

Before King, Graves, and Ho, *Circuit Judges*.

Per Curiam:*

Lawrence Higgins, an inmate in Texas, appeals the district court's dismissal of his 42 U.S.C. § 1983 retaliation claim. Higgins claims that two custody classification committee members and the warden retaliated against him for filing a grievance about improper procedures used in collecting a

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20341

urine sample from him. For the reasons that follow, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## I. Facts & Procedural History

In February 2013, Ernest Navarrete, then an officer of the Texas Department of Criminal Justice (TDCJ), ordered Lawrence Higgins, Texas inmate # 1060189, to provide a urine sample. The sample tested positive for marijuana. Prison officials held a disciplinary hearing and found Higgins guilty of using marijuana and changed his custody categorization from G-2 (general population) to G-4 (medium custody), the latter of which involves less out-of-cell time and more restriction on recreation and inmate job opportunities. Higgins filed a grievance regarding the custody categorization, and prison officials overturned the previous decision because Navarrete had not signed the required urine-sample documentation; Warden Richard Morris ordered the case to be reheard.

In May 2013, at the rehearing, Higgins was found guilty of using marijuana at the prison and was then brought before the custody classification committee for a second time. But this time, because of a promotion, Navarrete was head of the committee. Custody classification is determined by a majority vote of three committee members—here, Navarrete, Deleta Jones, and Betty Germany. Navarrete asked Germany what they usually do in these cases, and she replied, "G-4 medium custody." Then Navarrete asked Jones what her vote was; to which she replied, "[G-4] medium custody."

Navarrete then stated, "I remember this case now, this is the one where you filed a grievance and the case was overturned because I forgot to sign the paperwork." Recognizing the two G-4 votes, he then said, "I guess we are going to leave you as you were originally put for the case on [G-4] medium custody, but let the record show, that I would have rather put you in

[G-5] closed custody for all this trouble." Then Jones said, "Oh wait a minute, I want to change my vote to [G-5] closed custody." Higgins was assigned to G-5 closed custody.

Higgins filed unsuccessful grievances, and then in August 2013 Higgins filed a complaint against Navarrete, Jones, and Warden Morris (the "defendants") pursuant to 42 U.S.C. § 1983. He alleged that Morris improperly ordered a rehearing of his case and that Navarrete and Jones retaliated against him for his use of the grievance process by increasing his punishment. Higgins sought to have prison officials dismiss his case and return him to G-2 status.

The defendants moved for summary judgment, which the district court granted, finding that Higgins failed to show the required causation between the alleged retaliatory motive and the less favorable custody classification. On appeal, this court reversed, concluding that Higgins had presented a genuine dispute of material fact as to causation, and remanded for further proceedings. *Higgins v. Morris*, 673 F. App'x 376, 379 (5th Cir. 2016).

Following remand, the district court permitted Higgins to amend his complaint, and he added a demand for monetary relief. Defendants again moved for summary judgment, arguing that (1) Higgins's request for the court to change his custody classification is moot because he has been in G-2 custody since August 2014,[1] (2) reversal of Higgins's disciplinary case is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (3) defendants are entitled

---

[1] It is worth noting that Higgins remained in G-5 custody for nine months after the custody classification at issue. Then, he was moved to G-4 custody for six months before he was moved to G-2 custody, which has remained his classification to date.

No. 20-20341

to qualified immunity, and (4) Higgins failed to prove the causation element of his retaliation claim.

The district court dismissed the case with prejudice, granting defendants' summary judgment motion because "[t]he record shows that Higgins's requested relief in his original complaint is moot and that he is not entitled to compensatory or punitive relief." On appeal, Higgins argues that the district court did not address his request to have the disciplinary conviction reversed and that the district court erred in finding that he was not entitled to monetary relief. Despite requesting and receiving an extension, the defendants did not file an appellate brief. Higgins also moved to supplement the record with details relating to his custody classification.

## II. Standard of Review

We review a district court's summary judgment decision about a section 1983 retaliation claim de novo. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003) (per curiam) (citing FED. R. CIV. P. 56(c)). A prisoner's verified or sworn pleadings are competent summary judgment evidence. *See id.* at 765 ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

## III. Discussion

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270

(5th Cir. 2008) (quoting *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999) (per curiam)). In order to show retaliation, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.' " *Woods*, 60 F.3d at 1166 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Higgins has a right, under the First Amendment, to file a grievance. *Morris v. Powell*, 449 F.3d 682, 683–84 (5th Cir. 2006). And our court has already concluded that, as for the second (i.e., the intent) element of a retaliation claim, "Navarrete's statement suggests his own vote was motivated by retaliatory intent." *Higgins v. Morris*, 673 F. App'x 376, 379 (5th Cir. 2016). It is undisputed that the increase from G-4 to G-5 is an adverse act. And our court has further concluded that Higgins has at least created a factual dispute about "Navarrete's retaliatory motive caus[ing] Jones to change her vote." *Id.* Despite this, the district court granted summary judgment to the defendants, dismissing Higgins's claims with prejudice. The court did so by focusing on the specific forms of relief that Higgins requests.

First, we address Higgins's request for injunctive relief in the form of custody reclassification and his request to have his disciplinary conviction reversed. Then, we turn to his request for damages. Last, we examine the issue of an unmentioned defendant.

## A. Custody Reclassification and Disciplinary Conviction Reversal

Our court has held that provision of the specific relief sought by a prisoner moots the claim for that relief. *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995) (concluding a prisoner's requested transfer to a different prison was moot because he had received the transfer); *see also White v. Epps*, 191 F. App'x 336, 337 (5th Cir. 2006) (concluding a prisoner's requested transfer out of a particular prison unit was moot because he had received the

transfer). Because Higgins has been in G-2 custody since August 2014, we find that Higgins's claim requesting transfer to G-2 custody status is moot. Additionally, because this claim is moot, we deny Higgins's motion to supplement the record with additional classification-committee records.

Higgins's complaint also requested relief in the form of reversal of his disciplinary case, and he did not abandon this request for relief on his first appeal. The district court, however, did not address Higgins's request for reversal of his disciplinary conviction at either opportunity. Nor did our court address Higgins's request in his first appeal. *Higgins*, 673 F. App'x 376. On this appeal, Higgins urges us to reverse his disciplinary case because it resulted in a three-year delay in his parole-consideration date. We decline to consider this argument because, "[a]s a court for review of errors," we do "not . . . decide facts or make legal conclusions in the first instance," but "review the actions of a trial court for claimed errors." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991). Instead, we remand to the district court to consider this unresolved issue.

## B. Compensatory Damages

Higgins asked for "any monetary damages the court or a jury deems appropriate be them compensatory or punitive." The Prison Litigation Reform Act of 1995 (PLRA) "prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 605 (5th Cir. 2008); *see* 42 U.S.C. § 1997e(e). Higgins alleges that he "has endured much harm and suffering" and was "housed in an extremely violent atmosphere where inmates were regularly gas bombed for violent outbursts." However, the record does not show evidence that Higgins experienced a physical injury, and the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Mayfield*, 529 F.3d at 605. Accordingly, the district court's grant of summary judgment on these grounds is affirmed.

## C. Punitive and Nominal Damages

Punitive and nominal damages, unlike compensatory damages, require no such physical injury. *Hutchins v. McDaniels,* 512 F.3d 193, 197–98 (5th Cir. 2007) (per curiam). In order to recover punitive damages, Higgins must show that defendants' behavior was "motivated by evil . . . intent, or . . . involve[d] reckless or callous indifference to" his rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994) (stating same). "Although in many instances a factual dispute as to a constitutional violation will preclude summary judgment on punitive damages, it will not when there is no material question of fact as to the reckless nature of the defendant's conduct." *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017).

Higgins provided evidence that during the custody committee's voting, Navarette said "let the record show, that I would have rather put you in closed custody [i.e., G-5] for all this trouble," referring to the fact that Higgins filed a grievance "and the case was overturned because [Navarette] forgot to sign the paperwork." Responding to Navarette's statement, Jones changed her vote from G-4 to G-5. The district court, citing no law, found that these statements "do not show . . . an evil intent" but "show at most that the defendants were vindictive." The Oxford English Dictionary defines "vindictive" actions as being "[c]haracterized by a desire for, or the exercise of, revenge." *Vindictive*, OXFORD ENGLISH DICTIONARY (2022). An evidenced desire for revenge may well qualify as evil intent and, at least in the context of voting for a harsher custody classification, raises a genuine issue

No. 20-20341

as to whether defendants acted with reckless or callous indifference to Higgins's First Amendment right to file a grievance.[2] Because the record presents a material question of fact as to the intent underlying Navarette and Jones's conduct, we reverse the district court's grant of the defendants' summary judgment motion and remand to the district court for further proceedings.

Additionally, because Higgins requested "any monetary damages the court or jury deems appropriate," the district court should also consider nominal damages on remand.[3]

### D. Warden Morris

Higgins sued Warden Morris for ordering that Higgins's disciplinary case be reheard. The district court did not address Higgins's claim against Warden Morris but dismissed the full suit with prejudice. However, Higgins does not appeal the issue. Instead, he concedes that the grievance office gave Warden Morris the option to order the case reheard. Arguments not briefed on appeal are abandoned. *Geiger v. Jowers*, 404 F.3d 371, 373 n.6 (5th Cir. 2005) ("Although *pro se* briefs are to be liberally construed, *pro se* litigants have no general immunity from the rule that issues and arguments not briefed on appeal are abandoned." (citations omitted)). Accordingly, the district

---

[2] We also note that, although not at issue in Higgins's previous appeal, while analyzing the causation element of the retaliation claims, our court stated that "Navarrete's statement suggests his own vote was motivated by retaliatory intent," *Higgins*, 673 F. App'x at 379, and that "Jones's vote for a G-5 classification was motivated by retaliatory animus." *Id.*

[3] We construe Higgins's *pro se* filing liberally. *Jones v. Tex. Dep't of Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018) (per curiam).

court's grant of summary judgment as to Higgins's claim against Morris is affirmed.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment in part and REVERSE the judgment in part. The case is REMANDED with instructions. We DENY plaintiff's motion to supplement the record.